BRADLEY et al. v. STANDARD LIFE & ACCIDENT INS. CO. OF DETROIT, MICH.

(Supreme Court, Appellate Division, Fourth Department.  May 2, 1906.)

INSURANCE—EXISTENCE OF CONTRACT.

> Plaintiff, insured in an employer's liability policy covering certain work, wrote the general agent of insurer, stating that plaintiff understood that the policy covered certain other work which plaintiff had undertaken, to which the agent replied that the policy did not cover the work, that the rate was a specified sum, but that he would "bind the risk" until plaintiff decided what he desired to do, and that plaintiff should communicate with the agent at a certain time on the next day.  The agent's letter was not answered, and after the time fixed by the agent for consultation an employé was injured.  *Held*, that there was no contract of insurance covering the employer's liability for the injury.

> [Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, § 196.]

Appeal from Trial Term, Oswego County.

Action by Walter Bradley and others against the Standard Life & Accident Insurance Company of Detroit, Mich.  From a judgment (93 N. Y. Supp. 245) in favor of plaintiffs, defendant appeals.  Reversed.

The action was commenced on the 18th day of November, 1901, to recover the amount which the plaintiffs paid in settlement of a claim made between them and the representatives of one of their employés, who, as is alleged, was killed solely through their negligence; the contention being that, by an alleged contract of insurance previously entered into between them and the defendant, it agreed to indemnify and save harmless the plaintiffs from all such claims and liability in the premises.  The defendant denies that any such contract was made or entered into on its part, and that issue presents practically the only question involved upon this appeal.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Theodore E. Hancock, for appellant.

D. P. Morehouse, for respondents.

McLENNAN, P. J.  The circumstances and correspondence which it is claimed constituted a contract of insurance between the parties to this action, stated most favorably to the plaintiffs, are as follows: The defendant at all the times mentioned was engaged in the business of issuing empolyers' liability insurance by means of a certain form of policy.  Previous to the time involved in this litigation, the defendant had issued at least two of such policies to the plaintiffs, one commencing April 21, 1897, and ending April 21, 1898, and purporting to insure them against accident to their employés while engaged in canal excavation, earth, and rock, on the Oswego Canal at Oswego, N. Y., and the second policy, commencing April 21, 1898, and ending April 21, 1899, insuring them against accident to their employés while engaged in mason work on the Oswego Canal, rebuilding lock No. 18, section 2, and laying slope and vertical wall.  The last of such policies, at least, was the usual form of policy which the defendant company issued during the year 1898, and was in force at the time when the alleged contract in suit is claimed to have been made.  At all the times mentioned one A. T. Armstrong, who had his office in Syracuse, N. Y.,

was the general agent of the company. While the second poli·y referred to was in force, the plaintiffs entered into a contract to rei·uild and enlarge a raceway at Fulton, N. Y., in the county of Oswego, for a manufacturing concern known as the W. G. Gage & Co. Such work was in no manner connected with the Oswego Canal or with the work referred to in either of the insurance policies previously issued to the plaintiffs. On the 16th day of July, 1898, while the last policy above referred to, issued by the defendant to the plaintiffs, was in force, the plaintiffs wrote to the defendant's general agent as follows:

"Oswego, N. Y. July 16, 1898.

"Mr. A. T. Armstrong, 306 Granger Block, Syracuse, N. Y.—Dear Sir: We have commenced work on a job of rock excavation and masonry at Fulton, N. Y. As we understand it, policy No. 8,750 held by us covers this work; also, what is the additional cost to cover public?

"Yours truly,          Walter Bradley & Co."

Three days later, and on July 19th, defendant's general agent replied to plaintiffs as follows:

"Syracuse, N. Y., July 19, '98.

"Walter Bradley & Co., Oswego, N. Y.—Dear Sir: Your esteemed favor of the 16th received, and in reply would say that your present policy 8,750 will not cover work done in Fulton, N. Y., as the policy was taken out for mason work done on the Oswego Canal. As near as I can figure the work you now have on hand at Fulton, the rate will be $3 per $100 on the excavating and blasting, and $1.98 on the mason work; $1.50 per $100 on the outside public. Wish you would call me up by 'phone to-morrow at 12 o'clock, if possible, at my expense; I can then explain the matter more satisfactorily to you. I will bind the risk now until you have decided just what you want to do. If you so desire, I can come to Fulton or Oswego to-morrow afternoon. Trusting that we may arrange the matter satisfactory to you, I remain,

"Yours, very respectfully,          A. T. Armstrong."

Such letter was received by one of the plaintiffs at the company's office in Oswego on the evening of July 20th. No answer was made to the letter; its receipt was not acknowledged, but it was filed away with the other business papers of the plaintiffs, and the member of plaintiffs' firm who received it states, in substance, that he so filed it away understanding that the firm was insured. The other two members of the firm, including the one who wrote the letter of July 16th to defendant's agent, were absent from plaintiffs' place of business when the letter in question was received. On July 26th, and before Mr. Armstrong or the defendant, which he represented, had received any answer or response to his letter of July 19th, one Fred Guy Fitch, an employé of the plaintiffs, working in the excavation in enlarging the raceway at Fulton, N. Y., for W. G. Gage & Co., was injured, we will assume through the negligence of the plaintiffs, and in such manner that he died. On the following day the plaintiffs mailed a letter to Armstrong, in which was inclosed a detailed statement of the accident, and a claim that the defendant was liable to the plaintiffs on account thereof. On the same day the plaintiffs mailed a letter to the defendant at its home office in Detroit, in which they stated:

"Inclosed you will find notice of accident on our work at Fulton, N. Y., which resulted in the death of Fred Fitch of that place. Have also sent notice to Mr. A. T. Armstrong, your agent at Syracuse, N. Y."

Such letters were received by Armstrong and by the defendant company on July 28th.  On August 1st one of the plaintiffs called upon Armstrong, and was informed that the matter had passed out of his (Armstrong's) jurisdiction; that it had been referred to the company.  Aside from that conversation, the plaintiffs received no communication from the defendants until August 12th.  On August 12th one E. E. Niess, an agent of the defendant, went to Fulton, inspected the plant, works, and machinery of the plaintiffs, and received from the plaintiffs a brief account of the accident, and after such interview informed the plaintiffs that the company which he represented was not liable for the accident.  Thereafter, and on August 15th, defendant's agent Niess returned the detailed notice of loss which the plaintiffs had mailed on July 27th, and stated that the defendant was not liable, "as this company has no policy or contract of insurance on the work where this accident happened."  Subsequently an administrator was duly appointed of the Fitch estate (the employé who was killed), and commenced an action against the plaintiffs to recover for the damages caused by his death.  The plaintiffs notified the defendant of the commencement of such action, and asked that it defend the same.  Subsequently the plaintiffs settled the action brought by the representatives of Fitch by paying the sum of $1,500.  Thereupon this action was brought to recover said $1,500 and $185.75, costs incurred therein, upon the theory that the defendant had made a contract of insurance by which it became obligated to indemnify and save the plaintiffs harmless against any loss or damage occasioned by the death of their employé Fitch.

It seems to me that a bare statement of the facts is sufficient to show that no contract of insurance covering the accident in question ever existed between the parties.  Clearly the work upon which plaintiffs' employé was engaged at the time when he received the injury which resulted in his death was not covered by either of the former policies issued by the defendant.  The letter written by the plaintiffs under date of July 16th indicates that they understood such work was covered by the last policy issued to them; that it would be only necessary to determine the additional premium which should be paid.  But the letter which they received from defendant's agent Armstrong clearly and explicitly states that the former policy issued to them did not cover the work being done by them in Fulton, and where the accident occurred.  He states what the rate will be for insurance upon such work, and asks that they call him up the following day on the telephone, and adds: "I can then explain the matter more satisfactorily to you."  He then adds:

"I will bind the risk now until you have decided just what you want to do. If you so desire, I can come to Fulton or Oswego to-morrow afternoon. Trusting that we may arrange the matter satisfactory to you, I remain," etc.

These two letters cannot by any possibility be held to constitute a contract of insurance.  "Whether a contract of insurance has been made or not depends upon the question of whether the respective parties have come to an understanding upon all the elements of the contract; the parties thereto; the subject-matter of insurance; the amount for which it is to be insured; the limits of the risk, including

its duration in point of time and extent in point of hazards assumed; the rate of premium; and, generally, upon all the circumstances which are peculiar to the contract and distinguish it from every other, so that nothing remains to be done but to fill up the policy and deliver it, on the one hand, and pay the premiums, on the other." May on Insurance (4th Ed.) section 43. In the case at bar all the essential elements specified by the learned author are wanting. An unevinced mental determination to accept a proposition to enter into a contract is not sufficient to establish the contract. White v. Corlies et al., 46 N. Y. 467. In the case at bar the facts and circumstances disclosed by the record, construed most favorably in plaintiffs' behalf, only indicate that they communicated to the defendant by letter their understanding that they were insured against accident to their employés while engaged in work for W. G. Gage & Co. because of another policy issued by the defendant which related to an entirely different piece of work, and they asked what rates or premium would be demanded to insure them against accident to others not their employés. Immediately they were informed by defendant's general agent that their understanding in that regard was incorrect, that the policy previously issued had no reference to and did not cover the work in which they were then engaged, but that the defendant was willing to enter into a contract of insurance covering the liability desired by them, and he quoted rates or premium which he assumed would cover such liability. He asked the planitiffs to communicate with him immediately, naming a time the following day, so that they might come together and settle upon the terms of the contract. He stated in his letter, however, that he would bind the risk in the meantime. We think that the agreement to bind the risk was only operative until the time fixed by Armstrong when the consultation with the plaintiffs should occur, and it should be determined whether or not a contract of insurance should be effected. Defendant heard nothing more from plaintiffs for a period of nearly 10 days, and until after the accident in question occurred, and then it was informed for the first time, in substance, that its alleged proposal to insure had been accepted, and that the plaintiffs would seek to hold it liable for any claims made against them on account of the accident. Up to this time the parties had not agreed upon the terms or conditions of the contract of insurance; what its scope should be; the nature or character of the liabilities insured against; the premium which was to be paid; the term for which the insurance should continue; or, in fact, any material detail respecting the alleged contract of insurance. These facts show conclusively that no valid contract of insurance was entered into between the parties. That being so, it is of no consequence what was subsequently done as between the parties. Clearly nothing was done by the defendant which led the plaintiffs to incur any expense, or to assume for the moment that the defendant admitted or assumed that it was liable for the injuries sustained by the plaintiffs' employé, and therefore the question of estoppel is not involved.

We conclude that upon the undisputed facts disclosed by the record the plaintiffs are not entitled to recover.

It follows that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide event. All concur.